IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| DONALD M. RICHARDS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 317-023 |
| ) | |
| JEROME DANIELS, Sgt., ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Sumter County Prison in Americus, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case concerning events at Dodge County Law Enforcement Center ("LEC"). Defendant Daniels moves for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 38), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

**I.    PROCEDURAL BACKGROUND**

Plaintiff originally named seven Defendants in his complaint. However, because he is proceeding IFP, the Court screened his complaint, found Plaintiff had arguably stated a viable claim against Defendant Daniels for failing to protect him from a known threat, and recommended dismissal of the other six Defendants. (See doc. nos. 12, 13.) After United States District Judge Dudley H. Bowen, Jr., adopted that recommendation as the opinion of the Court, Defendant Daniels answered the complaint on November 10, 2017, and the Clerk issued

a Scheduling Notice setting deadlines for the case. (Doc. nos. 16, 18, 21-1.) Plaintiff filed two untimely motions to amend his complaint in an attempt to add four new Defendants, but both motions were denied for the reasons explained in Orders dated March 23, 2018, and April 25, 2018. (See doc. nos. 30, 31, 34, 37.) Thus, the only issue before the Court in these summary judgment proceedings is Plaintiff's failure to protect claim brought against Defendant Daniels.

The Clerk of Court issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 39.) Moreover, Plaintiff was first informed of the consequences of a summary judgment motion in the Court's September 8, 2017 Order. (Doc. no. 12, pp. 6-7.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.

Plaintiff's response consists of four handwritten pages describing Plaintiff's understanding of how housing assignments are made at LEC and an assertion he "can and will produce witnesses to these facts" at some unidentified time. (Doc. no. 40, p. 2.) Plaintiff also relies on his Answers to Defendant's Defenses, and Defendant's Request for Admissions. (Id. at 4 (citing doc. no. 27).) Because Plaintiff did not contradict Defendant's factual assertions with any evidence or affidavits as contemplated by Federal Rule of Civil Procedure 56,[1] the Court deems admitted all portions of Defendant's Statement of Material Facts having

---

[1] Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

evidentiary support in, and not otherwise contradicted by, the record. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000).

However, this does not automatically entitle Defendant to summary judgment because as the movant, he continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

**II.   FACTS**

Defendant Daniels is a P.O.S.T.-certified corrections officer at LEC, a county jail in Eastman, Georgia.[2] (Stm. of Material Facts ("SMF"), doc. no. 38-2, Def.'s Decl., doc. no. 38-3, ¶ 3.) On August 6, 2016, Defendant responded to an emergency code call from another officer regarding an altercation between Plaintiff and two other inmates, one of whom was Taurus Holloway. (Id. ¶ 4.) Defendant was not present at the time the altercation occurred and was not responsible for assigning Plaintiff and Mr. Holloway to the same pod. (Id.) Plaintiff fought off

---

[2]P.O.S.T. stands for Georgia Peace Officer Standards and Training Council. (Doc. no. 38-1, p. 1 n.1.)

3

the two inmates, who were trying to rob him. (Compl., doc. no. 1, p. 5.)[3]  Plaintiff received medical treatment after the August 6th altercation, and Corporal Timothy Shepherd moved Plaintiff away from Mr. Holloway and into a different pod and cell. (SMF, Def.'s Decl. ¶ 6 & Ex. 2, Jail Incident Rpt. & Ex. 4, Pl.'s Dep. at 9:20-23, 10:17-23.)

Plaintiff sat down with Defendant after the altercation to review paperwork, and Defendant went into the pod to retrieve the materials taken from Plaintiff. (Pl.'s Dep. at 14:8-15:6.) A "no contact" order was not put in place after the August 6th altercation because LEC does not execute such orders. (Def.'s Decl. ¶ 6.) Plaintiff testified "somebody," he does not know who, told him there was a note in the computer based on the August 6th altercation that he and Mr. Holloway "weren't supposed to have contact," but "somehow it got missed." (Pl.'s Dep. at 35:20-24, 36:22-37:24.)

On October 25, 2016, Defendant responded to another emergency code regarding a fight between Plaintiff and two inmates, one of whom again was Mr. Holloway. (Def.'s Decl. ¶ 7.) Plaintiff acknowledges taking the first swing at Mr. Holloway, asserting he swung first so as to avoid having Mr. Holloway "sucker punch" him as he had done during the first altercation. (Pl.'s Dep. at 19:3-20:24, 32:13-20.) Similarly, the Incident Report identifies Plaintiff as the aggressor in the altercation who threw the first punch. (Def.'s Decl. ¶ 8 & Ex. 3, Jail Incident Rpt.) Upon arriving at the scene, Defendant assisted in separating Plaintiff, who had been injured, and Mr. Holloway. (Id.) Plaintiff received emergency care at Eastman Hospital following the altercation. (SMF, Ex. 3, Jail Incident Rpt.; Pl.'s Dep. at 21:12-22:25.)

---

[3]Plaintiff verified the statements in his complaint under penalty of perjury. (Doc. nos. 1, 1-1.)

4

Plaintiff has no direct knowledge or evidence to establish Defendant Daniels was responsible for placing Plaintiff and Mr. Holloway in the same pod prior to the October 25, 2016 altercation. (Pl.'s Dep. at 34:13-19.) Specifically, Plaintiff testified two junior officers at LEC "probably" brought Mr. Holloway to Plaintiff's pod on October 25, 2016, and he thinks Defendant would have told those two officers what to do because he was the sergeant on duty. (Id. at 32:23-33:7.) However, jail records show two sergeants on duty at the time of the October 25, 2016 altercation, Defendant and Will Purvis, as well as Corporal Shepherd. (SMF, Ex. 3, Jail Incident Rpt.) Defendant attests he neither placed Plaintiff in the same pod with Mr. Holloway on October 25th, nor knew Plaintiff and Mr. Holloway were in the same pod, as the booking officer is typically responsible for inmate placement and movement. (Id. ¶¶ 5, 7, 9.)

When questioned about his basis of knowledge concerning pod placement on October 25, 2016, Plaintiff testified as follows:

> Q: Let's go back to the report where it says, Sergeant Purvis and Sergeant Daniels and Corporal Shepherd responded to the code.
>
> A: Sergeant Daniels and Corporal Shepherd, yes, they both came down.
>
> Q: And it says Sergeant Purvis, too, doesn't it?
>
> A: It does say Sergeant Purvis. I don't know.
>
> Q: So you don't know which sergeant was –
>
> A: I don't –
>
> Q: Let me finish the question because it gets jumbled up if I don't. Do you know which Sergeant gave instructions to Snellgrove and Madison to bring Holloway to the F-Dorm.
>
> A: I can't prove that. I have no idea. I wasn't there. I know Sergeant Daniels has seniority over Purvis, but I don't know anything. He

5

> has been there longer.
>
> Q:   How do you have that information?
>
> A:   Because he has been there longer because I was there. It is a small jail. You talk to people.
>
> Q:   I need to separate what you know from personal knowledge and from what other people told you.
>
> A:   I have no idea who did it.

(Pl.'s Dep. at 34:1-35:2.)

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)

(explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendant Is Entitled to Summary Judgment.

Defendant contends he is entitled to summary judgment because: (1) Plaintiff was not subject to a substantial risk of harm; (2) he did not act with deliberate indifference to any substantial risk of serious harm; (3) his conduct was not the cause of Plaintiff's injuries; (4) he cannot be held liable on a theory of supervisory liability; and (5) he is protected by qualified immunity. (Doc. no. 38.) Plaintiff opposes the motion based on his contention Defendant is responsible for pod assignments at LEC and missed a no-contact order issued for Plaintiff and Mr. Holloway after the August 6, 2016 altercation, resulting in the second, injury-causing altercation on October 25, 2016. (See doc. nos. 27, 40.)

7

### 1. Legal Standard for Analyzing an Eighth Amendment Failure to Protect Claim

A prisoner has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*). However, because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation.[4] Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005); see also Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981) ("This does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."); Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) ("Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" (citing Farmer v. Brennan, 511 U.S. 825, 833-34 (1994))). "An excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014).

---

[4]The record is not clear whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of the events alleged in the complaint. If Plaintiff was a pretrial detainee, his "rights arose under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment." Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir. 2009)). However, the uncertainty regarding Plaintiff's status need not delay the Court because whether a pretrial detainee or a convicted prisoner, Plaintiff's claim is subject to the same scrutiny applied to an Eighth Amendment a deliberate indifference claim. See Mann, 588 F.3d at 1306 (citing Hamm v. DeKalb Cty., 774 F.2d 1567, 1574 (11th Cir. 1985)).

"Merely negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*) (citation omitted). Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

In particular, a prisoner seeking to impose liability for an Eighth Amendment claim must establish the existence of "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted). The deliberate indifference prong of the test requires proof of "(1) subjective knowledge of a risk of serious harm; and (2) disregard of

9

that risk (3) by conduct that is more than mere negligence."[5] Dang *ex rel.* Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted); see also Lane, 835 F.3d at 1308 ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") (citing Farmer, 511 U.S. at 837)).

### 2. Defendant Is Entitled to Summary Judgment Because Plaintiff Cannot Establish the Three Elements Necessary to Impose Liability for an Eighth Amendment Claim.

Applying an objective standard to the first prong of Plaintiff's deliberate indifference claim, the undisputed facts show Plaintiff was not exposed to a substantial risk of serious harm. See Lane, 835 F.3d at 1307; Caldwell, 748 F.3d at 1099. The record establishes one altercation between Plaintiff and Mr. Holloway prior to the October 25, 2016 altercation for which Plaintiff seeks to hold Defendant liable. (Compl., p. 5; SMF, Ex. 2, Jail Incident Rpt.) There is no evidence of threats of future violence by word or deed between Plaintiff and Mr. Holloway after the first altercation. The conditions of Plaintiff's confinement in LEC were not representative of a "prison where violence and terror reign." Harrison, 746 F.3d at 1299. Moreover, although Plaintiff argues he acted in self-defense against Mr. Holloway during the October 25th altercation based on the manner in which their fight started during the first

---

[5] The Court rejects Defendant's reliance on a standard of "gross negligence" for the reasons explained by the Eleventh Circuit in Melton, 841 F.3d at 1223 n.2. In any event, as explained above, Defendant is entitled to summary judgment under the "mere negligence" standard.

altercation, (doc. no. 40, pp. 3-4), he readily admits he threw the first punch on October 25th that resulted in the second fight with Mr. Holloway.  (Pl.'s Dep. at 19:3-20:24, 32:13-20.)

As to the second prong, the undisputed facts show Defendant neither actually (subjectively) knew Plaintiff faced a substantial risk of serious harm, nor disregarded that known risk by failing to respond to it in an (objectively) reasonable manner.  See Lane, 835 F.3d at 1307; Caldwell, 748 F.3d at 1099.  First, there is no evidence Defendant was actually aware Plaintiff faced a substantial risk of serious harm on October 25th.  Defendant was not present when the altercation started, but instead arrived on the scene in response to an emergency code.  (Def.'s Decl. ¶¶ 7, 8.)  Nor was Defendant responsible for pod assignments, meaning he was not aware Plaintiff and Mr. Holloway had been placed in the same pod on October 25th.  (Id. ¶¶ 5, 7, 9.)

Although Plaintiff now strenuously argues Defendant was responsible for pod assignments at LEC, (see doc. no. 40), his argument cannot defeat Defendant's summary judgment motion.  Plaintiff provides nothing which satisfies the dictates of Federal Rule of Civil Procedure 56(c) to support his argument.  "[A]n affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated."  United States v. Stein, 881 F.3d 853, 854 (11th Cir. 2018) (*en banc*).  Here, however, Plaintiff's opposition does not cite to particular evidence in the record and does not comply with the requirements for an affidavit or declaration under Rule 56(c) requiring it to:  "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

11

Even if Plaintiff's opposition papers did comply with the dictates of Rule 56, it is in direct contradiction, without explanation, of his prior sworn deposition testimony that he did not know who directed Mr. Holloway be brought to the same pod where Plaintiff was housed on October 25th. Specifically, when asked how he knew who gave the instruction to the junior officers to bring Mr. Holloway to the same pod where Plaintiff was housed, Plaintiff responded, "I can't prove that. I have no idea. I wasn't there. I know Sergeant Daniels has seniority over Purvis, but I don't know anything. He has been there longer." (Pl.'s Dep. at 34:13-19.) When pressed to explain his basis of knowledge, Plaintiff explained he had talked to people at the jail, but conceded, "I have no idea who did it." (Id. at 34:21-35:2.)

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, *without explanation,* previously given clear testimony." Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) (emphasis added); see also Bryant v. U.S. Steel Corp., 428 F. App'x 895, 896 (11th Cir. 2011) (*per curiam*) (affirming district court's disregard of affidavit submitted to avoid summary judgment that "squarely contradicted unequivocal testimony [the plaintiff] gave on deposition"). Plaintiff now attempts to avoid summary judgment by arguing he "can and will produce witnesses" to support his assertion Defendant is responsible for pod assignments, and thus by extension for Mr. Holloway being in the same pod on October 25th. (Doc. no. 40.) Plaintiff has no explanation for the contradiction to his sworn deposition testimony. This cannot suffice to avoid summary judgment.

Second, Plaintiff cannot establish Defendant disregarded a known risk in an objectively unreasonable manner. As discussed above there was no known risk, but to the

12

extent Plaintiff argues there was a no-contact order put in place after the first altercation on August 6th that could have prevented the October 25th altercation if the order had been enforced, that argument fails.  LEC does not have a policy of creating no-contact orders, but in response to the altercation, Plaintiff and Mr. Holloway were immediately separated. (Def.'s Decl. ¶ 6 & Ex. 2, Jail Incident Rpt. & Ex. 4, Pl.'s Dep. at 9:20-23, 10:17-23.) Additionally, even in consideration of Plaintiff's assertion he was shown on someone's computer somewhere that he and Mr. Holloway were on each other's no-contact list, (doc. no. 40, p. 3), Plaintiff states such an order was "missed" due to Defendant's "negligence." (Id.; doc. no. 27.)  Thus, if there were a no-contact order, which there is no evidence to suggest exists, even Plaintiff does not claim a conscious disregard of such an order, but rather mere negligent oversight.  Negligence does not suffice.  See Farmer, 511 U.S. at 835-39; Adams, 61 F.3d at 1543; Brown, 894 F.2d at 1537.

As to the third prong of an Eighth Amendment claim, the record shows Plaintiff cannot establish causation between any deliberate indifference and Plaintiff's injuries resulting from the October 25th altercation.  See Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016).  Causation can be shown by personal participation in the alleged constitutional violation.  Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007) (citation omitted).  As discussed in detail above, there no evidence to show Defendant was responsible for Plaintiff and Mr. Holloway ending up in the same pod on October 25th.  Moreover, the record shows Plaintiff threw the first punch that incited the altercation which resulted in Plaintiff's injuries.  (Pl.'s Dep. at 19:3-20:24, 32:13-20; Def.'s Decl. ¶ 8 & Ex. 3, Jail Incident Rpt.)  Plaintiff's reasons for throwing the first punch, to avoid a "sucker punch" as delivered

by Mr. Holloway in the first altercation, cannot establish causation when the record is clear Defendant did not cause Plaintiff to be in the same pod with Mr. Holloway and was not present when the October 25th altercation started.

In sum, Plaintiff cannot satisfy any of the three elements of his Eighth Amendment failure to protect claim.

### 3. Defendant Is Entitled to Summary Judgment Because He Cannot Be Held Liable on a Theory of Supervisory Liability.

To the extent Plaintiff may be attempting to hold Defendant responsible as the supervisor of a "crew" who brought Mr. Holloway to his pod on October 25th, (doc. no. 1, p. 5), Defendant is entitled to summary judgment on that claim as well. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) ("Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). Therefore, to hold Defendant Daniels liable for the acts of any subordinates not named as defendants, Plaintiff must demonstrate that either (1) Defendant actually participated in the alleged constitutional violation, or (2) there is a causal connection

between Defendant's actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Here, as discussed in detail above, Plaintiff cannot show Defendant actually participated in the alleged deliberate indifference.  Defendant was not present when either altercation started but instead responded to emergency calls concerning the fights. (Def.'s Decl. ¶¶ 4, 7, 8.)  Nor was Defendant responsible for assigning Plaintiff and Mr. Holloway to the same pod on either August 6th or October 25th.  (Id. ¶¶ 5, 7.)

Likewise, Plaintiff has not alleged the requisite causal connection between Defendant and any alleged constitutional violation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences."  Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

15

There is no evidence of widespread abuse concerning a failure to protect inmates from violence at the hands of fellow inmates at LEC, let alone widespread abuse of which Defendant was aware but did nothing to correct. Neither is there any evidence of a custom or policy created by Defendant resulting in deliberate indifference to inmate safety, nor that Defendant directed any subordinates to act unlawfully or knew subordinates would act unlawfully but failed to stop them. As explained above, there is no evidence Defendant was responsible for the disputed pod assignment, and Plaintiff has conceded he does not know who gave the jail officers instructions on October 25th to bring Mr. Holloway to the same pod where Plaintiff was housed. (Pl.'s Dep. at 34:1-35:2.) Thus, Plaintiff cannot establish the elements of a supervisory liability claim against Defendant.

Because Defendant Daniels should be granted summary judgment on the merits of Plaintiff's claim, he does not need the protection of qualified immunity, and the Court therefore need not address Defendant's argument on that point.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 38), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 21st day of September, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA